*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
April 13, 2026
12:15 PM

Plaintiff-Appellee,

v

No. 371101
Wayne Circuit Court
LC No. 22-006766-01-FH

MARKEL OUTLAW,

Defendant-Appellant.

Before: KOROBKIN, P.J., and YOUNG and BAZZI, JJ.

PER CURIAM.

Defendant, Markel Outlaw, appeals by right following his conviction by a jury of two counts of carrying a concealed weapon (CCW), MCL 750.227, and one count of transporting a firearm in a vehicle, MCL 750.227d. On appeal, defendant contends: (1) his due-process right to reasonable notice of the charges against him was violated when the prosecution amended the information shortly before trial to include an additional charge; (2) the trial court erred when it did not allow defendant to introduce evidence of his application for a concealed pistol license (CPL); (3) the trial court erred when it denied defendant's request for a jury instruction on carrying a licensed pistol for a lawful purpose; (4) he was deprived of his right to the effective assistance of counsel; and (5) MCL 750.227 and MCL 750.227d, as applied, violate his Second Amendment right to bear arms. For the reasons stated in this opinion, we disagree with defendant's arguments, and therefore affirm.

## I. BACKGROUND AND FACTS

This case arose from a traffic stop initiated by officers from the Detroit Police Department when they observed a black Dodge Ram being driven with an expired license plate. As the officers approached the vehicle, Officer Tyke Reid made contact with defendant, who was in the front passenger seat, and noticed an AR-style rifle by his leg. Defendant informed Reid that the gun was legally purchased and not loaded. The driver of the vehicle did not have his driver's license and the vehicle was uninsured, so officers had the vehicle towed. Reid conducted an inventory search of the vehicle. In addition to recovering the rifle he had observed near defendant's leg, Reid found two handguns in the vehicle's glove compartment. The handguns were not loaded.

-1-

Defendant informed the officers that all three weapons were his. Defendant also stated that he did not have a CPL. Defendant was arrested and charged with two counts of CCW, a felony. The prosecution filed an amended information a week before trial adding the misdemeanor charge of transporting a firearm in a vehicle. The CCW charges pertained to the two handguns found in the glove compartment, while the transporting charge pertained to the rifle.

Before trial began, defendant moved to strike the amended information, arguing that the new misdemeanor charge was added too close to the start of trial. The trial court denied defendant's motion, stating that defendant was aware of the facts against him from his preliminary examination.

The prosecution opposed defendant's attempt to have his CPL application admitted as evidence at trial. Defendant had not provided the prosecution with his exhibit list or exhibits, and the prosecution argued that the CPL application was irrelevant and would confuse the jury. Defendant argued the application would not confuse the jury because it was identified as an application and not a CPL. The trial court ruled that defendant's CPL application was irrelevant, and thus inadmissible.

Defendant requested M Crim JI 11.14 (Exemption—Licensed Pistol Carried for a Lawful Purpose) as a jury instruction. The trial court denied the request, stating that defendant failed to show that there was sufficient evidence in the record from which a jury could find that the requirements for that jury instruction were met.

Defendant was found guilty as charged and sentenced to 30 days in jail and two years of probation. This appeal followed.

## II. ANALYSIS

### A. AMENDED INFORMATION

Defendant claims that his right to due process was violated when the trial court allowed the amended information. We disagree.

A trial court's decision to allow an amendment to an information is reviewed for abuse of discretion. *People v Muhammad*, 326 Mich App 40, 69; 931 NW2d 20 (2018). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes, or when it makes an error of law." *Id*. (cleaned up). Whether a defendant's right to due process was violated is an issue of constitutional law we review de novo. *People v McGee*, 258 Mich App 683, 699; 672 NW2d 191 (2003).

According to defendant, the amended information violated his due-process right to reasonable notice of the charges against him. "The trial court may allow the prosecution to amend the complaint to include a new charge if amendment would not cause unacceptable prejudice to the defendant because of unfair surprise, inadequate notice, or insufficient opportunity to defend." *People v Carlton*, 313 Mich App 339, 353; 880 NW2d 803 (2015) (quotation marks and citation omitted). "The Due Process Clause of the Fourteenth Amendment mandates that a state's method for charging a crime give a defendant fair notice of the charge against the defendant, to permit the

defendant to adequately prepare a defense." *People v Chapo*, 283 Mich App 360, 364; 770 NW2d 68 (2009). "Lack of adequate notice violates a defendant's right to due process and mandates reversal." *People v Darden*, 230 Mich App 597, 601; 585 NW2d 27 (1998). But "to establish a due process violation, a defendant must prove prejudice to his defense." *McGee*, 258 Mich App at 700. "Whether an accused [was] accorded due process depends on the facts of each case." *Id*.

Defendant argues his defense was prejudiced by the late amendment because: (1) the elements of transporting a firearm in a vehicle were different from the elements of CCW and (2) defendant was only given a week notice of the new charge, preventing him from developing a defense. But defendant does not identify a defense he would have investigated, developed, or pursued given more time to prepare. Defendant merely asserts in conclusory terms that the nature and timing of the amendment caused prejudice, but this is insufficient. See *id.* at 702 (finding no prejudice when defendant did not explain what different defense would have been presented).

A preliminary examination was held on defendant's CCW charges on October 26, 2022, where Reid testified about all three guns that were found in the vehicle, including the rifle that later formed the basis for the misdemeanor charge. Defendant was thus provided notice of the facts against him more than eight months before the prosecution filed the amended information on July 10, 2023. Defendant had an opportunity to investigate and develop his case before the amendment and the week after the amendment was filed to determine whether he had a viable defense. And defendant did not request additional time after the trial court denied his motion to strike the amendment.

On these facts, we conclude that defendant has not shown that his defense was prejudiced by the amendment adding the misdemeanor charge. Accordingly, the amendment to the information did not violate his right to due process, and the trial court did not abuse its discretion by allowing it.

## B. CPL APPLICATION

Next, defendant claims that the trial court erred when it refused to admit his CPL application into evidence. We disagree.

We review decisions on the admission of evidence for abuse of discretion. *People v Duncan*, 494 Mich 713, 722; 835 NW2d 399 (2013). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes," *id*. at 722-723, and "[a] trial court necessarily abuses its discretion when it makes an error of law," *id*. at 723. "When the decision regarding the admission of evidence involves a preliminary question of law, such as whether a . . . rule of evidence precludes admissibility of the evidence, the issue is reviewed de novo." *People v Washington*, 468 Mich 667, 670-671, 664 NW2d 203 (2003).

To begin, it is important to clarify the grounds on which the trial court refused to admit the evidence. We disagree with defendant's assertion that the trial court excluded the CPL application from evidence because of defense counsel's failure to file an exhibit list and disclose the application during discovery. Although the trial court remarked upon defense counsel's failure to disclose the application in advance, our review of the record reveals that the trial court ultimately denied the application's admission at trial because it was not relevant.

"The trial court may only admit relevant evidence." *People v Lane*, 308 Mich App 38, 55; 862 NW2d 446 (2014). "Relevant evidence is evidence that has any tendency to make a fact of consequence more or less probable." *Id*. Irrelevant evidence is not admissible, MRE 402, so a trial court does not abuse its discretion by excluding irrelevant evidence.

Whether the trial court was correct to conclude that the CPL application was irrelevant turns on a question of statutory interpretation, which we review de novo. See *People v Hall*, 499 Mich 446, 452; 884 NW2d 561 (2016). "The paramount rule of statutory interpretation is that we are to effect the intent of the Legislature." *People v Droog*, 282 Mich App 68, 70; 761 NW2d 822 (2009) (quotations marks and citation omitted). "Statutory interpretation begins with the text of the statutes, and effect must be given to every clause and sentence." *Hall*, 499 Mich at 453-454 (quotation marks and citation omitted). "If the statutory language is unambiguous, we presume that the Legislature intended the meaning expressed, and the statute must be enforced as written." *People v Schumacher*, 276 Mich App 165, 168; 740 NW2d 534 (2007).

The CCW statute, MCL 750.227, provides, in relevant part: "A person shall not carry a pistol . . . whether concealed or otherwise, in a vehicle operated or occupied by the person, . . . without a license to carry the pistol as provided by law . . . ." MCL 750.227(2). "To support a charge of CCW, the prosecution need only show that the defendant knowingly carried a pistol in an automobile or on his or her person; if a defendant then wishes to avoid the CCW charge based on a CPL, the burden shifts to the defendant to prove that he or she was properly licensed to carry the weapon." *People v Brown*, 330 Mich App 223, 230; 946 NW2d 852 (2019) (cleaned up).

CPL applications are governed by MCL 28.425b. Under MCL 28.425b(1), when a CPL application is first submitted, the applicant is issued a receipt, and the receipt is then used by the applicant to obtain fingerprints in support of the application. Under MCL 28.425b(9), the entity providing fingerprinting services then issues another receipt at the time the fingerprints are taken. And under MCL 28.425b(14):

> If a license or notice of statutory disqualification is not issued . . . within 45 days after the date the individual has classifiable fingerprints taken under subsection (9), *the receipt issued under subsection (9)* serves as a concealed pistol license for purposes of this act *when carried with a state-issued driver license or personal identification card* and is valid until a license or notice of statutory disqualification is issued by the county clerk. [Emphasis added.]

Here, defendant sought to admit his CPL application into evidence; there is no indication in the record that defendant was prepared to offer a fingerprinting receipt into evidence. Yet, as emphasized above, MCL 28.425b(14) provides only that the fingerprinting receipt "serves as a [CPL]" after 45 days. Therefore, defendant's CPL application could not serve as a CPL under the plain language of the statute.

Further, even if the CPL application document defendant offered for admission included his fingerprinting receipt,[1] the receipt serves as a CPL only "when carried with a state-issued driver

---

[1] Defendant did not provide us with a copy of his proposed exhibit as part of his appeal.

license or personal identification card." MCL 28.425b(14). Defendant admitted during the traffic stop and at trial that he did not have a CPL, and he points to no evidence that he was carrying his fingerprinting receipt and either a driver's license or personal identification card when he was arrested.[2]

Consequently, defendant's CPL application, standing alone, did not have any tendency to make a fact of consequence more or less probable. See *Lane*, 308 Mich at 55; MRE 401. The burden was on defendant to prove that he was properly licensed, *Brown*, 330 Mich App at 230, and the trial court did not err in determining that the CPL application was not relevant to that issue. Therefore, the trial court did not abuse its discretion by refusing to admit it into evidence.

## C. JURY INSTRUCTION

Next, defendant claims that the trial court erred when it denied his request for a jury instruction on carrying a pistol for a lawful purpose. We disagree.

"The determination regarding whether a jury instruction is applicable to the facts of a case is reviewed for an abuse of discretion; however, questions of law relative to jury instructions are reviewed de novo." *People v Geary*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 371889); slip op at 2. "The trial court abuses its discretion when its outcome falls outside the range of principled outcomes." *People v Armstrong*, 305 Mich App 230, 239; 851 NW2d 856 (2014).

"A criminal defendant is entitled to have a properly instructed jury consider the evidence against him." *People v Riddle*, 467 Mich 116, 124; 649 NW2d 30 (2002). "When a defendant requests a jury instruction on a theory or defense that is supported by the evidence, the trial court must give the instruction." *Id*. "However, if an applicable instruction was not given, the defendant bears the burden of establishing that the trial court's failure to give the requested instruction resulted in a miscarriage of justice." *Id*. "The defendant's conviction will not be reversed unless, after examining the nature of the error in light of the weight and strength of the untainted evidence, it affirmatively appears that it is more probable than not that the error was outcome determinative." *Id*. at 124-125.

---

[2] Under MCL 28.425b(9)(f), the fingerprinting receipt is required to contain the following statement:

> This receipt was issued for the purpose of applying for a concealed pistol license. As provided in . . . MCL 28.425b, if a license or notice of statutory disqualification is not issued within 45 days after the date this receipt was issued, this receipt shall serve as a concealed pistol license for the individual named in the receipt when carried with an official state-issued driver license or personal identification card.

Therefore, if defendant had been carrying this receipt at the time of the traffic stop, it is likely he would have known to produce it rather than state that he did not have a CPL.

Defendant contends that the trial court erred when it denied his request to include M Crim JI 11.14 in the jury instructions. M Crim JI 11.14 states:

> (1) This law does not apply to a person who carries a licensed pistol in a vehicle for a lawful purpose. However, the pistol must be licensed, completely unloaded, and in a closed case or container designed for the storage of firearms [in the trunk of the vehicle / and it must not be easily accessible to the people in the vehicle].

> (2) The prosecutor has the burden of proving beyond a reasonable doubt that the defendant was not carrying the pistol for a lawful purpose.

This jury instruction was not supported by the evidence. The trial court, in denying the request for the instruction, explained that according to "[t]he testimony that's been elicited and presented thus far and even your client's own testimony, the guns may have been broken down but they were not in a closed case designed for the storage of firearms." We agree with the trial court's assessment. The vehicle's glove compartment, which is where the pistols were found, could reasonably be described as a "closed case or container," but not one "*designed* for the storage of firearms." M Crim JI 11.14(1) (emphasis added).

On appeal, defendant does not contest the trial court's determination that a glove compartment is not "designed for the storage of firearms." Instead, defendant argues that the trial court misinterpreted the requirements of the jury instruction. According to defendant, the portion of the jury instruction that states "in a closed case or container designed for the storage of firearms" means in *either* a (1) closed case, *or* (2) container designed for the storage of firearms. Put another way, defendant interprets the phrase "designed for the storage of firearms" as modifying only "container" and not "closed case." Defendant essentially invokes the "last antecedent" rule of statutory interpretation, which "provides that a modifying or restrictive word of clause contained in a statute is confined solely to the immediately preceding clause or last antecedent, unless something in the statute requires a different interpretation." *Duffy v Mich Dep't of Natural Resources*, 490 Mich 198, 221; 805 NW2d 399 (2011) (quotation marks and citation omitted). Because a glove compartment is a "closed case," defendant argues, the jury instruction was warranted.

Viewing the jury instruction in isolation, defendant makes a compelling argument. But we must ultimately disagree with defendant's interpretation because viewing the jury instruction in isolation would be unwise. Jury instructions must accurately reflect the underlying substantive law. See *People v McGhee*, 268 Mich App 600, 606; 709 NW2d 595 (2005). Consequently, our interpretation of M Crim JI 11.14 in this instance is properly informed by its statutory reference, MCL 750.231a(1)(e). And that statute provides, in relevant part:

> (1) [MCL 750.227] does not apply to any of the following:

> * * *

> (e) To a person while transporting a pistol for a lawful purpose that is licensed by the owner or occupant of the motor vehicle in compliance with [MCL 28.422], and the pistol is unloaded in *a closed case designed for the storage of*

-6-

*firearms* in a vehicle that does not have a trunk and is not readily accessible to the occupants of the vehicle. [Emphasis added; footnote omitted.]

As clarified in the statute, the "closed case" must be one "designed for the storage of firearms." MCL 750.321a(1)(e). The jury instruction is properly interpreted in the same way, to avoid deviating from the applicable law. See *McGhee*, 268 Mich App at 606. Accordingly, the trial court did not err in interpreting the jury instruction's requirements and did not abuse its discretion in determining that it did not apply to the facts of this case.

## D. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant also claims that he was deprived of his constitutional right to the effective assistance of counsel. We disagree.

"The question whether defense counsel performed ineffectively is a mixed question of law and fact; this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of constitutional law." *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). Defendant preserved his ineffective assistance claim by moving in this Court to remand for a *Ginther*[3] hearing, which this Court denied without prejudice.[4] When this Court denies a motion for remand, our review of a defendant's ineffective assistance of counsel claim is for errors apparent on the record. *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020). We also have authority to remand the case if we conclude that further factual development is necessary.

The Michigan and United States Constitutions guarantee criminal defendants the right to be represented by an attorney. Const 1963, art 1, § 20; US Const, Am VI. "The constitutional right to counsel is not merely the right to have a lawyer stand or sit nearby; rather, a criminal defendant has the right to the effective assistance of counsel." *People v Otto*, 348 Mich App 221, 231; 18 NW3d 336 (2023). "A defendant must meet two requirements to warrant a new trial because of the ineffective assistance of trial counsel." *People v Armstrong*, 490 Mich 281, 289-290; 806 NW2d 676 (2011). "To establish a claim of ineffective assistance of counsel a defendant must show that counsel's performance was deficient and that counsel's deficient performance prejudiced the defense." *People v Fyda*, 288 Mich App 446, 450; 793 NW2d 712 (2010).

"Trial counsel's performance is deficient when it falls below an objective standard of professional reasonableness." *People v Hughes*, 339 Mich App 99, 105; 981 NW2d 182 (2021). To demonstrate deficient performance, "the defendant must overcome the strong presumption that counsel's assistance constituted sound trial strategy." *Armstrong*, 490 Mich at 290. "When reviewing defense counsel's performance, the reviewing court must first objectively 'determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.' " *People v Jackson (On Reconsideration)*, 313

---

[3] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[4] *People v Outlaw*, unpublished order of the Court of Appeals, entered March 18, 2025 (Docket No. 371101).

Mich App 409, 431; 884 NW2d 297 (2015), quoting *Strickland v Washington*, 466 US 668, 690; 104 S Ct 2052; 80 L Ed 2d 674 (1984). The defendant then must show that "but for counsel's deficient performance, a different result would have been reasonably probable." *Armstrong*, 490 Mich at 290. "Defendant also 'bears the burden of establishing the factual predicate for his claim.'" *People v Putman*, 309 Mich App 240, 248; 870 NW2d 593 (2015), quoting *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001).

Defendant contends that defense counsel was ineffective for failing to: (1) comply with discovery requirements; (2) take steps to warrant the inclusion of M Crim JI 11.14 in the final jury instructions; and (3) develop and present a defense. Defendant also argues that even if no single error warrants reversal standing alone, the cumulative effect of defense counsel's errors requires that he receive a new trial.

## 1. DISCOVERY

Beginning with discovery, defendant argues that defense counsel was ineffective for failing to provide the prosecution with defendant's CPL application in advance as required by the trial court's November 30, 2022 discovery order. That order required both parties, within 21 days, to disclose "[a] description of and an opportunity to inspect any tangible physical evidence that the party may introduce at trial . . . ." Defense counsel did not provide the prosecution a copy of defendant's CPL application until the day of trial, the prosecution objected, and the trial court excluded the evidence.

We agree with defendant that his trial counsel violated the discovery order because he planned to seek the admission of the CPL application at trial but he did not disclose it in advance. Accordingly, defense counsel's performance was deficient. See *Jackson*, 313 Mich App at 431.

To prevail on a claim of ineffective assistance of counsel, though, defendant must also demonstrate that defense counsel's deficient performance prejudiced him. *Fyda*, 288 Mich App at 450. Defendant describes defense counsel's failure to comply with the discovery order as the "most significant hurdle" to the admission of the CPL application. But as previously stated, our review of the record reveals that although the trial court remarked on defendant's failure to disclose the CPL application in advance, the trial court's actual basis for excluding the CPL application was its lack of relevance. See MRE 402. And, as also discussed above, the trial court did not abuse its discretion in excluding the CPL application on those grounds. Therefore, although defense counsel performed deficiently in not disclosing the CPL application as required by the discovery order, the deficiency did not affect the outcome. Accordingly, defendant cannot prevail on his ineffectiveness claim related to the discovery order.

## 2. JURY INSTRUCTION

Moving next to the jury instruction, defendant argues that defense counsel was ineffective for failing to establish grounds for including M Crim JI 11.14 in the final jury instructions.

As discussed above, defendant's trial counsel did request M Crim JI 11.14, but the trial court denied the request; the jury instruction was not supported by the evidence because it applies only if the pistol is "in a closed case or container designed for the storage of firearms." M Crim

JI 11.14. The pistols in this case were found in the vehicle's glove compartment, and the glove compartment is not "designed for the storage of firearms."

On appeal, defendant does little to explain what defense counsel could or should have done to get M Crim JI 11.14 included in the final jury instructions. Defendant does not deny that the pistols were, in fact, found in the glove compartment. Instead, defendant argues that defense counsel should have elicited evidence to show that the vehicle did not have a trunk, that its bed was filled with garbage and did not have room for safe storage of the pistols, that transporting the pistols in the back seat of the vehicle would have been inappropriate because a child was sitting there, and that the glove compartment was the safest location in the vehicle to store the pistols. Defendant also argues that he could have expanded his testimony to clarify that he was moving out of his ex-girlfriend's home and it would have been improper and unsafe to leave his weapons unattended there. But none of this evidence, had it been presented or developed, would have changed the fact that the pistols were not "in a closed case or container designed for the storage of firearms," M Crim JI 11.14, making the requested jury instruction inapplicable to the facts of the case and unsupported by the evidence. "Counsel is not ineffective for failing to advance a meritless position or make a futile motion." *People v Henry (After Remand)*, 305 Mich App 127, 141; 854 NW2d 114 (2014). Therefore, defendant's trial counsel was not ineffective for failing to establish grounds for including M Crim JI 11.14 in the final jury instructions.

### 3. PRESENT A DEFENSE

Next, defendant argues that defense counsel was ineffective for failing to meet with him to develop a defense against his CCW charges and his later-added charge of carrying a firearm in the vehicle.

"Trial counsel is responsible for preparing, investigating, and presenting all substantial defenses." *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009). "A substantial defense is one that might have made a difference in the outcome of the trial." *Id*. (quotation marks and citation omitted). "The failure to make an adequate investigation is ineffective assistance of counsel if it undermines confidence in the trial's outcome." *People v Grant*, 470 Mich 477, 493; 684 NW2d 686 (2004). Defense counsel is not ineffective for failing to meet more often with defendant so long as defense counsel was prepared for trial. *Payne*, 285 Mich App at 189.

Defendant asserts that defense counsel spent only a few minutes with him before trial, which he argues was insufficient to provide defendant effective assistance or for defendant to share his explanation of the events. But on appeal defendant does not describe a version of events materially different from the evidence presented at trial, nor does he explain how more meaningful contact with his attorney would have led to the development of a "substantial defense" to the charges "that might have made a difference in the outcome of the trial." *Chapo*, 283 Mich App at 371. The CCW statute provides:

> A person shall not carry a pistol concealed on or about his or her person, or, whether concealed or otherwise, in a vehicle operated or occupied by the person, except in his or her dwelling house, place of business, or on other land possessed by the person, without a license to carry the pistol as provided by law and if licensed, shall

-9-

not carry the pistol in a place or manner inconsistent with any restrictions upon such license.  [MCL 750.227(2).]

As discussed, defendant told the officers the pistols were his, and he also told them he did not have a CPL.  Defendant has not explained what his counsel could or should have done to prepare, investigate, or present a substantial defense to these charges.

As for MCL 750.227d, the statute provides, in relevant part:

(1) Except as otherwise permitted by law, a person shall not transport or possess in or upon a motor vehicle or any self-propelled vehicle designed for land travel either of the following:

(a) A firearm, other than a pistol, unless the firearm is unloaded and is 1 or more of the following:

(*i*) Taken down.

(*ii*) Enclosed in a case.

(*iii*) Carried in the trunk of the vehicle.

(*iv*) Inaccessible from the interior of the vehicle.

This charge pertained to the AR-style rifle found near defendant's leg when Officer Reid made contact with him during the traffic stop.  The evidence at trial established that these elements were met: the rifle was not disassembled, enclosed in a case, carried in the trunk, or inaccessible.  And, again, defendant does not explain what his counsel could or should have done to prepare, investigate, or present a substantial defense.

Defendant also argues that defense counsel "abandoned him," justifying a presumption that he was prejudiced under *United States v Cronic*, 466 US 648; 104 S Ct 2039; 80 L Ed 2d 657 (1984).  For claims of ineffective assistance of counsel, a defendant must ordinarily demonstrate that defense counsel was deficient and that defense counsel's deficiency prejudiced him.  *Strickland*, 466 US at 692.  In *Cronic*, however, the United States Supreme Court recognized that there are circumstances where prejudice is presumed for such a claim.  *Cronic*, 466 US at 658-659.  One of those circumstances is "the complete denial of counsel."  *Id*. at 659.  "The presumption that counsel's assistance is essential requires us to conclude that a trial is unfair if the accused is denied counsel at a critical stage of his trial."  *Id*.

Here, defendant contends that defense counsel's deficiencies were so extreme that they amount to abandonment such that he was effectively without counsel for his trial, thereby triggering *Cronic* and a presumption of prejudice.  We disagree.  In the affidavit accompanying his motion for remand, defendant admitted he met with defense counsel and discussed his case, but defense counsel told him there were few defenses for CCW.  The record also reflects that defendant had multiple plea offers which he discussed with defense counsel, noting he wanted to serve his time on the weekend to keep his job.  The prosecution was willing to work with defendant's request, but defendant ultimately rejected the plea offer and demanded a jury trial.  As

-10-

discussed, although defense counsel sought to introduce defendant's CPL application and requested M Crim JI 11.14, these efforts were futile under the facts of the case, not because defendant effectively lacked counsel. Nothing in the record demonstrates that defense counsel abandoned defendant warranting a presumption of prejudice under *Cronic*.

In sum, defendant cannot establish ineffective assistance of counsel for failure to present a defense.

### 4. CUMULATIVE ERROR

Defendant also argues that the cumulative effect of his trial counsel's errors requires reversal. "The cumulative effect of several errors can constitute sufficient prejudice to warrant reversal even when any one of the errors alone would not merit reversal, but the cumulative effect of the errors must undermine the confidence in the reliability of the verdict before a new trial is granted." *People v Dobek*, 274 Mich App 58, 106; 732 NW2d 546 (2007).

We conclude that defendant falls far short of establishing cumulative error. Defense counsel was not perfect, but defendant did not experience prejudice. Further, the evidence against defendant was substantial, and defendant has not established that counsel's deficiencies undermined confidence in the reliability of the trial's outcome. Consequently, defendant is not entitled to reversal on his claim of ineffective assistance of counsel. Nor has defendant established grounds for a remand for factual development of such a claim.

### E. SECOND AMENDMENT

Lastly, defendant claims that MCL 750.227 and MCL 750.227d, as applied to him, violate his right to bear arms under the Second Amendment. We disagree.

When preserved, "constitutional questions are generally reviewed de novo." *People v Vandenberg*, 307 Mich App 57, 61; 859 NW2d 229 (2014). To preserve a constitutional challenge, defendant must challenge the constitutionality of a statute in the trial court to preserve a claim on appeal. *Id*. Because defendant failed to raise his constitutional challenges in the trial court, his claim "is unpreserved and reviewed for plain error." *Id*. "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. "Reversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings." *People v Callon*, 256 Mich App 312, 329; 662 NW2d 501 (2003).

"A constitutional challenge to the validity of a statute can be brought in one of two ways: by either a facial challenge or an as-applied challenge." *People v Johnson*, 336 Mich App 688, 692; 971 NW2d 692 (2021) (quotation marks and citation omitted). The difference, we have explained, is the following:

A facial challenge alleges that a statute is unconstitutional "on its face," meaning that, in general, the challenger must establish that no set of circumstances exists under which the statute would be valid. An as-applied challenge alleges a present infringement or denial of a specific right or of a particular injury in process of actual execution of government action. [*People v Hughes*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 367172); slip op at 8 (cleaned up).]

Here, defendant states that he is bringing an as-applied challenge, so we must analyze whether the statutes in question "led to a denial of a specific right in light of the facts developed in [this] particular case." *People v Kiczenski*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 364957); slip op at 3.

"The Second Amendment of the United States Constitution provides, 'A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.' " *People v Deroche*, 299 Mich App 301, 305; 829 NW2d 891 (2013), quoting US Const, Am II. "The Second Amendment is fully applicable to the states through the Fourteenth Amendment." *Deroche*, 299 Mich App at 305 (quotation marks and citation omitted). "Second Amendment[] challenges typically revolve around two questions: (1) is the conduct at issue covered by the amendment, and if so, (2) can the state regulate the conduct consistent with the amendment?" *People v Dummer*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 369752); slip op at 4 (footnote omitted). "To answer these questions, we turn to the two-part test articulated in *New York State Rifle & Pistol Ass'n, Inc v Bruen*, 597 US 1, 17, 24; 142 S Ct 2111; 213 L Ed 2d 387 (2022), which is employed when addressing challenges to government regulation of arms as violative of the Second Amendment." *Dummer*, ___ Mich App at ___; slip op at 4. "Under *Bruen*, courts must first determine whether the plain language of the Second Amendment protects the conduct which the government regulation prohibits." *Id*. at ___; slip op at 4. "If the amendment does protect the challenged conduct, it is then the government's burden to establish that the particular regulation of that protected conduct is nonetheless permissible pursuant to our national historical tradition of weapon regulation." *Id*. at ___; slip op at 4. "Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.' " *Bruen*, 597 US at 17, quoting *Konigsberg v State Bar of California*, 366 US 36, 50 n 10; 81 S Ct 997; 6 L Ed 2d 105 (1961).

Defendant contends that MCL 750.227 and MCL 750.227d are unconstitutional as applied to him under the facts of this case. Specifically, defendant argues:

This Court should hold that *Bruen* prohibits Mr. Outlaw's conviction for carrying a concealed weapon and unlawful transport of a firearm, where [] two of the guns were disassembled and locked inside the glove box, one weapon was unloaded, Mr. Outlaw's CPL application was pending, Mr. Outlaw was a passenger in a pickup truck with garbage filling the bed such that the weapons could not be transported therein, the backseat was occupied by two people including a child, and it was unsafe to leave the weapons at his ex-girlfriend's house after he was moving out of that residence.

Although it is somewhat unclear how precisely defendant believes the *Bruen* framework renders his convictions invalid, we shall examine each statute to determine, as best we can, whether his claims have merit.

1.  MCL 750.227

We begin with MCL 750.227.  Again, the statute provides, in relevant part:

A person shall not carry a pistol concealed on or about his or her person, or, whether concealed or otherwise, in a vehicle operated or occupied by the person, except in his or her dwelling house, place of business, or on other land possessed by the person, without a license to carry the pistol as provided by law and if licensed, shall not carry the pistol in a place or manner inconsistent with any restrictions upon such license.  [MCL 750.227(2).]

In *Bruen*, the United States Supreme Court held that the Second Amendment protects the right of ordinary, law-abiding citizens to carry a handgun for self-defense outside the home.  *Bruen*, 597 US at 9-10.  The *Bruen* Court then examined the State of New York's licensing regime, which: (a) prohibited citizens from carrying a handgun outside the home unless they could demonstrate "proper cause," which essentially amounted to a requirement that they demonstrate a special need distinguishable from that of the general citizenry; and (b) granted licensing officials discretion to deny licenses for failure to demonstrate the proper-cause requirement.  *Id*. at 12-15.  Because this broad restriction on the rights of ordinary, law-abiding citizens to carry firearms was not supported by a historical tradition of weapon regulation, the Court held, it violated the Second Amendment. *Id*. at 38-39.

The *Bruen* Court was careful to distinguish New York's "may issue" licensing law, similar to those of only five other states and the District of Columbia, from 43 "shall issue" jurisdictions (including Michigan), "where authorities must issue concealed-carry licenses whenever applicants satisfy certain threshold requirements, without granting licensing officials discretion to deny licenses based on a perceived lack of need or suitability."  *Id*. at 13-14 & n 1.  Insofar as shall-issue licensing regimes "often require applicants to undergo a background check or pass a firearms safety course . . . to ensure only that those bearing arms in the jurisdiction are, in fact, law-abiding, responsible citizens," the Court clarified that such requirements are not, generally speaking, unconstitutional.  *Id*. at 38 n 9 (quotation marks and citation omitted); see also *id*. at 79-80 (Kavanagh, J., concurring).  The Court nonetheless left room for challenges to such regimes with this proviso: "That said, because any permitting scheme can be put toward abusive ends, we do not rule out constitutional challenges to shall-issue regimes where, for example, lengthy wait times in processing license applications or exorbitant fees deny ordinary citizens their right to public carry."  *Id*. at 38 n 9.

In *People v Langston*, ___ Mich App ___; ___ NW3d ___ (2024) (Docket No. 367270), this Court applied the *Bruen* framework to MCL 750.227.  Recalling that Michigan was identified in *Bruen* as one of the 43 "shall issue" states, *Langston* held that MCL 750.227's prohibition on carrying a pistol without a license does not in and of itself violate the Second Amendment. *Langston*, ___ Mich App at ___ n 9, ___; slip op at 4 n 9, 5.  The *Langston* Court was careful to emphasize that it was "not deciding whether the *details* of Michigan's statutory scheme for issuing

-13-

a CPL meet [c]onstitutional muster," *id.* at \_\_\_; slip op at 2 (emphasis added and footnote omitted); see also *id.* at \_\_\_ n 11; slip op at 5 n 11, only that "the very existence of the requirement to have a CPL" did not "run afoul of the Second Amendment under *Bruen*," *id.* at \_\_\_; slip op at 3. See also *id.* at \_\_\_; slip op at 5 ("We hold that a shall-issue statutory scheme requiring a [CPL] does not inherently violate the Second and Fourteenth Amendments to the United States Constitution.").

Turning back to the facts of this case and the arguments advanced on appeal, we are unable to discern any way in which enforcing MCL 750.227(2) against defendant violates his rights under the Second Amendment. Defendant asserts that his CPL application was "pending," and in *Bruen* the Court did state that it did "not rule out constitutional challenges to shall-issue regimes where, for example, lengthy wait times in processing license applications . . . deny ordinary citizens their right to public carry." *Bruen*, 597 US at 38 n 9. But defendant does not argue that any wait time in the processing of his CPL application was unconstitutionally long. Further, Michigan law requires that the county clerk issue or deny a license within 45 days after the applicant has their fingerprints taken,[5] and if the county clerk has not done so by that time then the applicant's fingerprinting receipt automatically serves as their CPL. MCL 28.425b(13), (14). But, as discussed, a CPL application is not a fingerprinting receipt, and there is no evidence that defendant had a fingerprinting receipt. Nor does defendant argue that he could not obtain one through the procedures laid out in MCL 28.425b. Therefore, defendant has not established that MCL 750.227's CPL requirement is unconstitutional as applied to him.

The other facts highlighted by defendant likewise do not support an as-applied Second Amendment challenge to MCL 750.227. In essence, defendant states that his pistols were unloaded, inside a glove compartment, and could not be stored safely elsewhere. But defendant would have been able to transport the pistols if he had a CPL, and *Bruen* and *Langston* are clear that the Second Amendment does not prohibit states from using shall-issue licensing laws that "are designed to ensure only that those bearing arms in the jurisdiction are, in fact, law-abiding, responsible citizens." *Bruen*, 597 US at 38 n 9 (quotation marks and citation omitted). Insofar as defendant violated MCL 750.227(2) by carrying pistols in a vehicle without first obtaining such a license, the statute does not violate his Second Amendment rights.

2. MCL 750.227d

Defendant also challenges to MCL 750.227d as applied to him. Unlike MCL 750.227, the constitutionality of MCL 750.227d has not been addressed by this Court or our Supreme Court. As stated, MCL 750.227d provides, in relevant part:

> (1) Except as otherwise permitted by law, a person shall not transport or possess in or upon a motor vehicle or any self-propelled vehicle designed for land travel either of the following:

---

[5] Fingerprinting requirements were specifically mentioned in *Bruen* as a permissible requirement of a shall-issue licensing regime. See *Bruen*, 597 US at 80 (Kavanagh, J., concurring).

(a) A firearm, other than a pistol, unless the firearm is unloaded and is 1 or more of the following:

(*i*) Taken down.

(*ii*) Enclosed in a case.

(*iii*) Carried in the trunk of the vehicle.

(*iv*) Inaccessible from the interior of the vehicle.

In contrast to MCL 750.227(2), which prohibits carrying a pistol in a vehicle without a CPL, MCL 750.227d regulates only the transport of firearms other than pistols but does not include a CPL exemption.

We conclude that MCL 750.227d, as applied to defendant, does not violate the Second Amendment. A case could be made that a complete ban on transporting operable firearms in a motor vehicle would violate the Second Amendment. The Supreme Court of Illinois, for example, has said that "possession of a ready-to-use firearm in [one's] vehicle constitutes public concealed carriage, which is presumptively protected under *Bruen*." *People v Thompson*, 2025 IL 129965, ¶ 44; ___ NE3d ___ (2025).[6] But MCL 750.227d applies only to firearms that are not pistols, and with a CPL operable pistols can be carried in a motor vehicle. See MCL 750.231a(a). Defendant, meanwhile, actually possessed two pistols in the vehicle at the time of his arrest for which he could have obtained an CPL. Because Michigan is a shall-issue state and allows CPL holders to carry operable pistols in a motor vehicle, MCL 750.227d does not violate the Second Amendment as applied to individuals like defendant who are able to obtain a CPL. Defendant could have complied with MCL 750.227d by meeting at least one of the four criteria in subsection (1)(a) of the statute, while still exercising his Second Amendment right to carry an operable firearm in his vehicle by obtaining a CPL for the pistols.

For these reasons, we hold that neither MCL 750.227 nor MCL 750.227d is unconstitutional as applied to defendant. Defendant is thus unable to establish plain error affecting his substantial rights that warrants reversal. See *Carines*, 460 Mich at 763.

### III. CONCLUSION

To summarize: (1) amendment of the information did not violate defendant's due-process right to reasonable notice of the charges against him; (2) the trial court did not err by excluding defendant's CPL application from evidence; (3) the trial court did not err by denying defendant's requested jury instruction; (4) defendant has not established a violation of his right to the effective

---

[6] "Although not binding on this Court, caselaw from other jurisdictions may be considered persuasive." *People v Konopka (On Remand)*, 309 Mich App 345, 369-370 n 8; 869 NW2d 651 (2015).

-15-

assistance of counsel; and (5) MCL 750.227 and MCL 750.227d do not violate the Second Amendment as applied to defendant.

Therefore, we affirm.

/s/ Daniel S. Korobkin
/s/ Adrienne N. Young
/s/ Mariam S. Bazzi